Arteaga 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00357-CV







Raul Arteaga, Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-02031, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Appellee Texas Department of Protective and Regulatory Services ("the State")
sued in district court to terminate appellant Raul Arteaga's parental rights to his daughters Laura
and Sara. Following a jury trial, the district court rendered judgment on the jury verdict
terminating Raul's parental rights to both daughters. Raul now appeals the trial-court judgment
in four points of error. We will affirm.



THE CONTROVERSY


 Raul Arteaga and his wife Isabel are Mexican nationals. Raul is a permanent legal
resident of the United States who has lived and worked in this country since 1982. Isabel, at the
time this cause was filed, was a temporary legal resident of the United States with an application
for permanent resident status pending before the Immigration and Naturalization Service. Laura,
their older daughter, was born in Mexico in 1990 and entered the country as an undocumented
alien. Sara, their younger daughter, is a U.S. citizen born in Texas in 1993. (1) Laura lived in
Mexico for the first two years of her life, in the care of her maternal grandparents, while the
Arteagas worked in Colorado and Texas. In the summer of 1992, Laura came to live with her
parents in Austin.

 After Laura arrived in Austin, Isabel began abusing her, and the State conducted
a protracted program of intervention to stop the abuse and to keep the family together. Laura was
treated at an Austin hospital for the first injury at the hands of her mother in August 1992. Laura,
who was two years old at the time, suffered from three different wounds to her head: swelling
of the face and scalp, purple bruising, and a black eye. Raul and Isabel alleged that the injuries
resulted from a fall, but the medical testimony established that the injuries were most likely due
to multiple blows to the head. Although the hospital reported the injury to the State Department
of Protective and Regulatory Services, the State did not feel it had enough evidence for a finding
of child abuse. In September 1992, Raul brought Laura to the hospital for treatment of a swollen
elbow and a "goose egg" on her forehead. An examination disclosed that Laura suffered from a
month-old fracture to the elbow. In January 1993, Laura accompanied her mother on a prenatal
care visit to a community clinic. A physician's assistant noticed extensive bruising on Laura's
face and contacted the State.

 On January 20, 1993, a State caseworker visited the Arteagas' apartment. The
investigator found that Laura had a number of injuries: a bandaged arm, a cut on the head,
scratches on her hands, and bruises on her wrist and ribs. After interviewing neighbors and
finding the Arteagas' explanations for the injuries to be inconsistent with a medical examination,
the investigator concluded that Laura had suffered abuse and removed her from her parents. The
next day, the State filed a suit to terminate Raul and Isabel's parental rights to Laura and obtained
an order appointing the State as Laura's temporary managing conservator. Before placing Laura
in foster care, the State attempted to place Laura with Raul's cousin, but he declined to take her. 
In February, the State and the Arteagas signed an agreed order detailing a plan of social services
for the family, which was designed to facilitate an eventual reunion of the family. Through
February and March, the Arteagas underwent psychological and parenting-skills assessments, had
supervised visits with Laura, attended therapy sessions, and took parenting classes. On March
3, 1993, Sara was born, and the State did not seek to remove her from the Arteagas. In June, the
district court held a hearing, determined that the Arteagas had complied with all the conditions
of the agreed order, and returned Laura to her parents. In October, the State dismissed its suit
to terminate parental rights but maintained temporary managing conservatorship over Laura.

 On February 18, 1994, Laura's teacher reported that Laura was being abused. The
teacher reported that Laura was frequently absent, cried easily, and was often bruised and
scratched; she decided to contact the State because Laura had arrived at school that day with a
discolored eye and said that her mother had hit her. A State investigator examined Laura and
found numerous injuries: bruises on her eye, lip, face, back, and thighs; scratches on her chest
and stomach; a split lip; and four pin-sized holes in a regular pattern on her scalp. Laura told the
investigator that her mother hit her and stabbed her with a fork, thus explaining the pin-sized
holes. The investigator then interviewed Raul and Isabel and found their explanations of Laura's
injuries to be unpersuasive. The investigator consulted with her supervisor and decided to remove
both Laura and Sara from their parents. When the State attempted to take physical possession of
the children, Raul became angry and violent, blocking the door and preventing the investigator
from calling 911. Raul physically restrained the investigator while Isabel fled with Sara, but the
investigator was eventually able to remove Laura.

 The State filed this cause on February 22, 1994, to terminate Raul and Isabel's
parental rights to both daughters. Raul appeared at trial, but the State was unable to locate Isabel
and Sara. (2) The trial court, in accordance with the jury's verdict, rendered judgment terminating
the parental rights of both Raul and Isabel to both daughters. Raul appeals the judgment in four
points of error: (1) the trial court did not have the authority to terminate his rights to Laura
because both he and Laura are Mexican nationals; (2) the trial court erred in terminating his
parental rights to Laura because the State failed to notify the Mexican Consulate of the
proceedings; (3) the trial court did not have jurisdiction to terminate his parental rights to Sara
because the State failed to show that Sara was in Texas at the time the suit was filed; and (4) the
trial court erred by allowing Raul's attorney to represent him despite an alleged conflict of
interest.



DISCUSSION


 In his first point of error, Raul argues that the trial court did not have the authority
to terminate his parental rights to Laura because both he and Laura are Mexican nationals. Raul
challenges both the trial court's subject-matter jurisdiction as well as its authority under Texas law
to grant the termination decree. We consider each argument in turn.

 A district court's statutory authority for subject-matter jurisdiction over suits
involving child custody may now be found in the Uniform Child Custody Jurisdiction Act
("UCCJA"), as incorporated in the Texas Family Code. (3) See Tex. Fam. Code Ann. §§ 102.011-.012, 152.001(a) (West 1996); Abderholden v. Morizot, 856 S.W.2d 829, 832 (Tex. App.--Austin
1993, no writ). The UCCJA applies to a suit by the State to terminate parental rights. See Tex.
Fam. Code Ann. § 152.002(4) (West 1996); White v. Blake, 859 S.W.2d 551, 561 (Tex.
App.--Tyler 1993, no writ); Williams v. Knott, 690 S.W.2d 605, 607 (Tex. App.--Austin 1985, no
writ). The UCCJA grants jurisdiction to the Texas courts if Texas is the child's home state at the
time the suit is filed. Tex. Fam. Code Ann. § 152.003(a)(1)(A) (West 1996). The statute defines
the child's home state as the state in which the child has lived for the six months before the date
the termination suit was filed. Id. § 152.002(6). The State filed the instant cause on February
22, 1994. Because Laura had lived in Austin since the summer of 1992, more than six months
before the State filed this suit, Texas was Laura's home state on the date this cause was filed. We
therefore hold, in accordance with the plain language of the UCCJA, that the trial court properly
exercised subject-matter jurisdiction over Laura's termination proceeding.

 Raul next argues that, even if the trial court had subject-matter jurisdiction over
Laura's termination proceeding, it did not have the authority to terminate his parental rights
because both he and Laura are Mexican nationals. Raul's argument presents a question of first
impression in Texas. We reject Raul's argument because the UCCJA applies to the international
arena and because Raul and Laura have extensive contacts with Texas. Under the facts of this
case, the trial court had the authority to order termination of Raul's parental rights to Laura.

 First, we note that the UCCJA specifically applies to international disputes. Id.
§ 152.023. (4) Two Texas cases have applied the UCCJA in an international context. See Koester
v. Montgomery, 886 S.W.2d 432 (Tex. App.--Houston [1st Dist.] 1994, no writ); Garza v.
Harney, 726 S.W.2d 198 (Tex. App.--Amarillo 1987, no writ). We follow the plain language of
the statute and the unanimous opinion of Texas appellate courts in applying the UCCJA to this
appeal.

 We also believe that the trial court's action was appropriate in light of the Arteagas'
strong connections to Texas and the United States. The Arteagas were not simply casual visitors
to this country. Raul had been granted permanent resident status by the INS and was therefore
permitted to legally reside in the United States indefinitely. See 8 U.S.C.A. § 1255 (West Supp.
1996). Raul had lived and worked in the United States for fourteen years and voluntarily decided
to move his family to Austin, Texas. His daughter Sara is an American citizen. Isabel was a
temporary legal resident and had applied for permanent resident status. Laura, though an
undocumented Mexican national, gained special immigrant juvenile status when she became a
ward of the State. See id. § 1101(a)(27)(J). As a permanent resident, Raul could have petitioned
the INS to give Laura permanent resident status also. See id. § 1186a. We believe that these
close connections between the Arteagas and Texas gave the trial court the authority to exercise
the jurisdiction granted to it by the UCCJA.

 Furthermore, the trial court's order of termination is supported by the State's
extensive efforts on behalf of the Arteagas. The Arteagas voluntarily took advantage of the State's
counseling and teaching services designed to improve their parenting skills and reunite the family. 
The State did everything in its power to keep the family together; it dismissed its first termination
suit, offered counseling and teaching services, returned Laura to the Arteagas, and filed its second
suit for termination only when the abuse continued. The State attempted to place Laura with
Raul's cousin before placing her in foster care outside the extended family. This is not a case in
which the State has hastily sought termination. The State has sought termination in this cause only
after all other steps failed to prevent the abuse. The State has a special interest in protecting
children from abuse, and it must be able to terminate parental rights to prevent continued abuse
when an extensive course of intervention has failed.

 Our analysis is supported by a recent opinion from the California Supreme Court. 
See In re Stephanie M., 867 P.2d 706 (Cal. 1994). In Stephanie M., the State of California sued
to terminate the parental rights of Mexican parents who had abused and neglected their Mexican
daughter. Stephanie's maternal grandmother, also a Mexican national, participated as a party
throughout the California termination proceedings and requested custody of Stephanie. A
Mexican court for the State of Jalisco also asserted jurisdiction over Stephanie, issued a decree
appointing a guardian for her, and wrote the California trial court requesting transfer of Stephanie
to Mexico. The Mexican Consulate in San Diego, which participated as an amicus curiae, argued
that the trial court did not have the power to terminate parental rights because Stephanie and her
parents were Mexican citizens and because a Mexican court had appointed a guardian for her. 
Id. at 709-12. The California Supreme Court affirmed the trial court's order terminating the
parents' rights and placing Stephanie in foster care with a California family. The California
Supreme Court reasoned that a trial court may, under the UCCJA, properly terminate parental
rights even though parents and child are foreign nationals. See id. at 713. We find the Stephanie
M. case persuasive and, for all of the foregoing reasons, we hold that the trial court had the
authority to terminate Raul's parental rights to Laura. We therefore overrule Raul's first point
of error.

 In his second point of error, Raul argues that the trial court erred in terminating
his parental rights to Laura because the State failed to give notice to the Mexican Consulate as
required by the Vienna Convention on Consular Relations. See Vienna Convention on Consular
Relations, April 24, 1963, 21 U.S.T. 77 (hereinafter "VCCR"). Article 37 of the VCCR provides
that the receiving State (here Texas) has the duty to "inform the competent consular post without
delay of any case where the appointment of a guardian or trustee appears to be in the interests of
a minor . . . who is a national of the sending State. The giving of this information shall,
however, be without prejudice to the operation of the laws and regulations of the receiving State." 
VCCR, 21 U.S.T. at 102. Raul contends that the State failed to adequately notify the Mexican
Consulate of the termination proceeding and, therefore, the termination decree is void under the
Vienna Convention.

 It is axiomatic that the State must adhere to United States treaties as the supreme
law of the land. See U.S. Const. art. VI, cl. 2 (Supremacy Clause). We reject Raul's argument,
however, because the State complied with the Convention by contacting the Mexican Consulate
about this cause. (5) The record shows that a State caseworker contacted the Mexican Consulate to
gain information about Raul's parents so the State could consider placing Laura with them. The
caseworker wrote a letter and called the Consulate ten times to check on the progress of the
investigation, but the Consulate neither supplied any information nor attempted to intervene or be
heard as an amicus curiae in this cause. Under the facts of this case, we hold that the State
complied with the VCCR by providing notice of this cause to the Mexican Consulate. (6) We
overrule Raul's second point of error.

 In his third point of error, Raul contends that the trial court did not have
jurisdiction to terminate his parental rights to Sara because the State failed to show that Sara was
in Texas at the time the suit was filed. Raul cites to the portion of the Family Code that
determines venue for custody disputes. See Tex. Fam. Code Ann. § 103.001 (West 1996). The
statute generally fixes venue in the county where the child resides; if the parents reside in different
counties, the child is deemed to reside in the same county as the parent with care and control of
the child. Id. §§ 103.001(a), (c)(2). Raul argues that Isabel now has care and control of Sara
and, therefore, the statute requires a termination case to be brought in the county where Isabel
resides. Because the State failed to show that Isabel was living in Texas at the time the suit was
filed, Raul argues that the trial court did not have jurisdiction to hear the termination case
concerning Sara.

 We reject Raul's argument because he confuses the concepts of venue and
jurisdiction. A district court's statutory authority for subject-matter jurisdiction over termination
suits may now be found in the Texas version of the UCCJA. See Tex. Fam. Code Ann.
§§ 102.011-.012, 152.001(a) (West 1996); Abderholden v. Morizot, 856 S.W.2d 829, 832 (Tex.
App.--Austin 1993, no writ). The venue statute comes into play only after the trial court has
determined that Texas courts have jurisdiction over the custody dispute. The venue statute fixes
the proper location for the proceeding among the various Texas courts that could exercise
jurisdiction over the action under the UCCJA. Therefore, we look to the UCCJA to determine
whether the trial court properly exercised jurisdiction over Sara's termination proceeding.

 We hold that the trial court properly exercised jurisdiction over the State's action
to terminate Raul's parental rights to Sara. Raul's sole argument is that the State failed to prove
that Sara and Isabel resided in Texas at the time the suit was filed. The UCCJA, however,
expressly rejects Raul's position: "Physical presence of the child, while desirable, is not a
prerequisite for jurisdiction to determine the child's custody." Tex. Fam. Code Ann.
§ 152.003(c) (West 1996) (emphasis added). Rather, jurisdiction is primarily lodged in the courts
of the child's home state, which is defined as the state in which the child has lived for the six
months preceding the time the suit was filed. See id. §§ 152.002(6), 152.003(a)(1). The UCCJA
also allows the child's home state to continue to exercise jurisdiction for six months after the child
has been removed from the home state by a parent or other person as long as one of the child's
parents continues to live in the home state. Id. § 152.003(a)(1)(B).

 The trial court in this cause properly exercised jurisdiction under section
152.003(a)(1)(B) of the UCCJA. Sara lived in Austin for at least eleven months, from her birth
on March 4, 1993, until February 18, 1994, when Isabel fled with her. The State filed this cause
on February 22, 1994. Texas had been Sara's home state for more than six months as of February
18, 1994. Therefore, even if Isabel removed Sara from Texas on that date, the UCCJA permitted
the trial court to assume jurisdiction because the State filed this cause within six months of Sara's
removal from Texas and because Raul continued to live in Austin at the time the cause was filed. 
See id. § 152.003(a)(1)(B). We overrule Raul's third point of error.

 In his fourth point of error, Raul argues that he did not receive a fair trial because
his trial counsel had two conflicts of interest: (1) she represented Isabel in the prior termination
proceeding that the State nonsuited, and (2) she had accepted a position at the Travis County
Attorney's office at the time this cause went to trial. Raul raises this point for the first time on
appeal. Although certain ineffective assistance of counsel claims may be brought for the first time
on appeal in a criminal case, parents in a termination case are not entitled to the constitutional
guarantee of effective counsel afforded to criminal defendants. In re J.F., 888 S.W.2d 140, 143
(Tex. App.--Tyler 1994, no writ); Posner v. Dallas County Child Welfare Unit of Tex. Dep't of
Human Servs., 784 S.W.2d 585, 588 (Tex. App.--Eastland 1990, writ denied). Attorney conflicts
of interest in civil cases are governed by the Texas Disciplinary Rules of Professional Conduct,
and complaints based on violations of those Rules are waived if not timely raised. See Vaughan
v. Walther, 875 S.W.2d 690, 691 (Tex. 1994). Raul has therefore waived any error by failing
to bring the alleged conflict to the attention of the trial court. Tex. R. App. P. 52(a).

 Even if Raul had preserved his error, we would reject his argument. Raul first
contends that his trial counsel's prior representation of Isabel violated Disciplinary Rule
1.09(a)(3), which provides that "a lawyer who personally has formerly represented a client in a
matter shall not thereafter represent another person in a matter adverse to the former client if it
is the same or a substantially related matter." Tex. Disciplinary R. Prof. Conduct 1.09(a)(3)
(1991), reprinted in Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West Supp. 1996) (State Bar
Rules art. X, § 9) (emphasis added). A lawyer only violates Rule 1.09 if the subsequent
representation is actually adverse and hostile to the former client; a mere potential conflict does
not suffice if there is no actual conflict. In re H.W.E., 613 S.W.2d 71, 72 (Tex. App.--Fort Worth
1981, no writ). The record discloses that Isabel and Raul did not have actually adverse interests
for the purposes of Rule 1.09. Both Isabel and Raul argued against termination of their parental
rights. Both Isabel and Raul filed general denials. Because the State sued only for termination,
no custody dispute between the two was involved, nor did they seek relief from one another. An
examination of Raul's trial testimony and Isabel's deposition testimony indicates that their interests
were not adverse in this cause. Furthermore, Isabel's attorney and Raul's attorney exercised their
jury strikes together.

 Raul next argues that his trial counsel had an impermissible conflict because she
had accepted future employment with the County Attorney at the time of the trial in this cause. 
Raul does not explain how this situation created a conflict of interest, arguing only that the County
Attorney's office works closely with the District Attorney's office, which represented the State
at trial. We find this argument to be without merit. Raul's counsel's conduct did not violate any
Disciplinary Rule, nor does Raul allege that it did. We find no conflict of interest and overrule
Raul's fourth point of error.



CONCLUSION


 Having overruled all of Raul's points of error, we affirm the judgment of the trial
court.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: June 12, 1996

Publish
1.   For the sake of completeness, we note that Sara is a dual citizen of both the United
States and Mexico because she was born to Mexican-national parents in the United States. 
Sara' dual citizenship does not affect our analysis of the issues in this case.
2.   Because Raul is the only appellant, the issue of service on Isabel is not raised in this
appeal.
3.   This cause was filed in February 1994 and is governed by the version of the Family
Code in effect at that time. Because the 1995 reenactment of the Family Code had no
substantive effect on the provisions of the Code at issue in this appeal, we cite the current
version for convenience.
4.   Section 152.023 provides in full:


The general policies of this chapter extend to the international arena. The
provisions of this chapter relating to the recognition and enforcement of
custody decrees of other states apply to custody decrees and decrees involving
legal institutions similar in nature to custody institutions rendered by
appropriate authorities of other nations if reasonable notice and opportunity
to be heard were given to all affected persons.


Tex. Fam. Code Ann. § 152.023 (West 1996).
5.   The State cites Stephanie M. for the proposition that the failure to give notice to a
consulate, when required by the Vienna Convention, does not invalidate judicial action taken
without such notice. See Stephanie M., 867 P.2d at 712-13. Because we find notice in this
case, we need not reach this issue.
6.   We note, however, that the State's actions in this cause constitute the bare minimum
of acceptable notice to the Mexican Consulate. We urge the State, in circumstances such
as these, to provide a definite documentary record demonstrating that the Mexican
Consulate received adequate notice affording it the opportunity for intervention if
desired.



991), reprinted in Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West Supp. 1996) (State Bar
Rules art. X, § 9) (emphasis added). A lawyer only violates Rule 1.09 if the subsequent
representation is actually adverse and hostile to the former client; a mere potential conflict does
not suffice if there is no actual conflict. In re H.W.E., 613 S.W.2d 71, 72 (Tex. App.--Fort Worth
1981, no writ). The record discloses that Isabel and Raul did not have actually adverse interests
for the purposes of Rule 1.09. Both Isabel and Raul argued against termination of their parental
rights. Both Isabel and Raul filed general denials. Because the State sued only for termination,
no custody dispute between the two was involved, nor did they seek relief from one another. An
examination of Raul's trial testimony and Isabel's deposition testimony indicates that their interests
were not adverse in this cause. Furthermore, Isabel's attorney and Raul's attorney exercised their
jury strikes together.

 Raul next argues that his trial counsel had an impermissible conflict because she
had accepted future employment with the County Attorney at the time of the trial in this cause. 
Raul does not explain how this situation created a conflict of interest, arguing only that the County
Attorney's office works closely with the District Attorney's office, which represented the State
at trial. We find this argument to b