268 Kan. 448 (2000)
996 P.2d 839
In the interest of L.A.M. and R.K.M., Children under 18 years of age.
No. 82,777.
Supreme Court of Kansas.
Opinion filed January 28, 2000.
Chris A. Garcia, of Wichita, argued the cause and was on the brief for appellant Puente.
Jay G. Horvath, of Law Office of Jay G. Horvath, of Wichita, was on the brief for appellees Miguel.
Steven J. Ternes, of Legal Services of Wichita, of Wichita, was on the brief as guardian ad litem.
The opinion of the court was delivered by
ABBOTT, J.:
The appellant, Arturo Puente, in his capacity as a Consulate for Mexico, appeals the trial court's order denying his motion for relief from judgment.
At the trial court level, the maternal grandfather, Lauriano Pardina Roman, and the Consulate requested that they be given interested party status pursuant to K.S.A. 38-1541, and that the trial court vacate the judgment granting custody to a paternal aunt and uncle. The facts can be found in In re L.A.M., 268 Kan. 441, 996 P.2d 834 (2000).
*449 The grandfather is not a party to this appeal and the Consulate did not appeal from the trial court's refusal to give him, in his capacity as the representative of Mexico, interested party status. Thus, we are faced with a jurisdictional issue.
At first glance, it would appear we have no jurisdiction. However, we are satisfied that Mexico has standing by virtue of a treaty (Vienna Convention on Consular Relations) with the United States, bringing into play the Supremacy Clause of the United States Constitution. We, thus, reach the issue of whether the notice given to the Consulate satisfies the notice requirements of the Vienna Convention on Consular Relations.
According to the terms of the treaty, notice must be given to a foreign nation "in the case of the death of a national" of the foreign country and "where the appointment of a guardian or trustee appears to be in the interests of a minor or other person lacking full capacity who is a national" of the foreign nation. Vienna Convention on Consular Relations, April 24, 1963, art. 37, 21 U.S.T. 77, 102, T.I.A.S. No. 6820.
The treaty further requires that "competent authorities" shall "inform without delay" the foreign nation that is the home of the national. The treaty does not define "competent authorities" and does not set forth any details describing how to "inform" a foreign nation.
The Consulate's representative testified that the Consulate was informed of the specific facts of this case in August 1998 by the minors' aunt's attorney. The appellant argues that the aunt's private attorney is not a "competent authority" and that her phone call to the Consulate notifying him of the death was not sufficient to comply with the terms of the treaty.
The introduction of the treaty sets forth in pertinent part:
"Believing that an international convention on consular relations, privileges and immunities would also contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems,
"Realizing that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective states." Vienna Convention, 21 U.S.T. at 79.
The focus of the treaty is, therefore, on promoting peaceful international relations and not on specific rights of individual citizens. *450 See Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir. 1997) (noting that the Vienna Convention does not create individual constitutional rights); U.S. v. Esparza-Ponce, 7 F. Supp.2d 1084, 1095-96 (S.D. Cal. 1998) (holding that violation of the Vienna Convention notice provisions does not require a suppression of evidence without a showing of prejudice); Republic of Paraguay v. Allen, 949 F. Supp. 1269, 1274 (E.D. Va. 1996) (noting that the Vienna Convention does not create private enforceable rights); and In re Stephanie M, 7 Cal. 4th 295, 309, 27 Cal. Rptr.2d 595, 867 P.2d 706 (1994) (failure to satisfy the notice provisions of the Vienna Convention does not deprive a juvenile court of jurisdiction in a parental termination/custody proceeding).
Although the Consulate may not have been informed of the facts important to this case in the best possible manner, nonetheless, he was informed sufficiently to fulfill the purpose of the treaty. The Consulate took action as a result of the phone call made by the aunt's attorney. The Consulate notified the nearest maternal relatives of the children. The Consulate assisted the aunt in obtaining the necessary documents for her to enter the United States and to claim the body of the minor children's mother. The Consulate took action to allow the aunt to stay in the United States until proceedings were held regarding the children. The Consulate also spoke with the grandfather. The Consulate did not take any action, however, on behalf of the grandfather until December 2, 1998, when he filed the motion for relief from judgment and the motion for interested party status. The Consulate made a strategic decision, believing that the aunt's attorney would be able to represent the interests of the grandfather. The Consulate's representative testified before the district court that had he received "proper notice" from the "competent authorities," his duties would have required him to contact L.A.M. and R.K.M.'s family, which he did. There is no indication that the Consulate would have done anything differently if he would have received "proper notice" from a "competent authority." We hold that the notice given to the Consulate sufficiently upheld the purpose and intent of the treaty.
Affirmed.