**E.R., C.R., N.R., J.R., and J.O.R.,**
Appellants–Respondents,

v.

**MARION COUNTY OFFICE OF FAMILY & CHILDREN,**
Appellee–Petitioner.

No. 49A02–9905–JV–354.

Court of Appeals of Indiana.

June 19, 2000.

Rafael Ramirez, Indianapolis, Indiana, Attorney for Appellants.

Elizabeth G. Filipow, Marion County Office of Family and Children, Loretta A. Oleksy, Child Advocates, Inc., Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

Regina Lopez and her husband, Carlos Rivera, Sr., bring this interlocutory appeal[1] from juvenile court proceedings, including Child in Need of Services (CHINS) proceedings and subsequent placement decisions, as to their five children, E.R., C.R., N.R., J.R., and J.O.R. Lopez and Rivera raise two restated issues:

1. Did the failure to comply with the notice provisions of the Vienna Convention on Consular Relations[2] result in error in the proceedings?

2. Are the juvenile court's determinations with regard to placement of the children contrary to the evidence?

We affirm.

The evidence relevant to the appeal discloses that Lopez and Rivera are from Mexico. E.R., C.R., N.R., and J.R. were born in Mexico. Lopez, Rivera, E.R., C.R., N.R., and J.R. are Mexican nationals.

In October 1996, the Marion County Office of Family and Children (the MCOFC) investigated injuries sustained by N.R. The MCOFC determined that N.R.'s injuries were exacerbated by Lopez and Rivera's failure to promptly seek treatment for N.R.'s fractured arm. No CHINS proceedings were filed at the time because the MCOFC representatives believed that Immigration and Naturalization officials were arranging for the family's return to Mexico. The family was not deported.

On January 10, 1997, N.R. suffered a severe head injury and was transported to Community Hospital in Indianapolis, Indiana. The emergency medical personnel discovered that N.R. was not following

1. Oral argument was held on March 28, 2000.

2. Vienna Convention on Consular Relations and Optional Protocols, Apr. 24, 1963, art. 36–37, 21 U.S.T. 77, T.I.A.S. No. 6820 (hereinafter, where appropriate, the Vienna Convention or the Convention). The Vienna Convention is a multilateral treaty to which the United States, Mexico, and other countries are signatories. *United States v. Lombera–Camorlinga*, 206 F.3d 882 (9th Cir.2000). The Convention was negotiated in 1963 and was ratified by the United States in 1969. *Id.*

commands, had secretions from her mouth, and was bleeding from her left ear. N.R. was diagnosed with a subdural hematoma and was sent to Riley Hospital for Children. Emergency surgery was performed on January 11, 1997. N.R. remained in the Pediatric Intensive Care Unit until February 3, 1997. Intensive in-patient rehabilitative treatment was recommended. N.R. received in-patient physical, occupational, and speech therapy until her discharge from the hospital in March 1997. Upon her discharge, N.R. began receiving out-patient rehabilitative treatment. She is partially paralyzed and undergoes speech and physical therapy.

The MCOFC investigated. Based upon medical evidence, and descriptions of N.R.'s treatment by Lopez, the MCOFC determined that N.R.'s injuries were inflicted by Lopez. Due to the injuries sustained by N.R., the MCOFC removed E.R., C.R., and J.R. from Lopez and Rivera's home on January 11, 1997. E.R., C.R., and J.R. were placed in foster care. N.R. was placed in foster care when she was discharged from Riley Hospital. On January 15, 1997, the MCOFC filed a petition alleging that E.R., C.R., N.R., and J.R. were CHINS.

After a hearing, the juvenile court issued a dispositional order in March 1998 determining that E.R., C.R., N.R., and J.R. were CHINS. Lopez gave birth to J.O.R. in Indianapolis on August 8, 1998.[3] Based upon the CHINS adjudication as to the other children, the MCOFC filed CHINS proceedings as to J.O.R. on August 12, 1998. J.O.R. was placed in foster care.

On May 3, 1999, J.O.R. was determined to be a CHINS and the juvenile court determined that J.O.R.'s continued placement in foster care was in her best interests. On the same day, the juvenile court reviewed the foster-care placement of the other four children and determined that

their foster-care placement should be continued. The juvenile court addressed Lopez and Rivera's request that the children be placed with relatives in Mexico. The juvenile court noted that Lopez and Rivera questioned the proceedings based upon the Vienna Convention. In pertinent part, the juvenile court's order provides:

The Court orders the children to remain [in] their current foster care placements and not to be placed in the custody of DIF in Mexico through the Mexican authorities. The Court specifically notes that there is not enough information for the Court to consider the best interests of the children as opposed to the treaties that may exist with the [United] States and Mexico as they may relate to the children. Specifically, the Court notes its impatience with the fact that the parties have been unable to agree on the translation to English of the home study done in [Mexico]. The Court ordered that to be done by April 23 and the parties did not get that done because of a failure to agree that someone in Indianapolis could do so. The Court notes that Counsel for parents indicates that he could give a summation of the home study but apparently cannot agree on having the document formally translated. For those reasons, the children stay where they are, in foster care.

The Court notes that there is filed a termination petition as to the four older children and that matter is held in abeyance while these matters are open.

The Court certifies two issues for purposes of interlocutory appeal:

1. [Whether] the Vienna Convention establishes a contractual relationship between the governments of the United States of America and the United States of Mexico as set out in the pleading filed by the parents on April 8, 1999; and 2,

---

3. The court in *Arteaga v. Texas Dep't of Protective and Regulatory Serv.*, 924 S.W.2d 756 (Tex.Ct.App.1996), noted that the dual citizenship, in Mexico and the United States, of the child born to Mexican nationals in the United States did not affect its analysis of the issues which included questions under the Vienna Convention.

Whether Article 36 of the Vienna Convention affords certain rights to parents of children who are subject to CHINS proceedings as set out in the pleading filed by the parents on April 8, 1999.

The Plan for permanency: Reunification with parent (s)

*Record* at 503–04. On July 1, 1999 this court granted Lopez and Rivera's request for certification of this appeal as interlocutory,[4] pursuant to Ind. Appellate Rule 4(B).

Initially, we will clarify the nature of the appeal. The parties indicate that the juvenile court certified issues to this court for review.[5] Our appellate rules provide for "appeal[s] from interlocutory orders...." App. R. 4(B). "The rule does not require or even permit certification of particular issues." *Harbour v. Arelco, Inc.,* 678 N.E.2d 381, 386 (Ind.1997). The rule requires certification of an interlocutory order. *Id.* Accordingly, this appeal must stem from an interlocutory order. Apparently because of Lopez and Rivera's assumption that they are appealing based upon the issues purportedly certified to this court, they do not clearly set out the order from which they are appealing. We observe that the juvenile court's order of May 3, 1999 is the only order from which an interlocutory appeal may be had at this juncture. Notwithstanding the juvenile court's purported certification of questions to this court on appeal, the import of the

May 3, 1999 order is to certify an interlocutory appeal.

The May 3, 1999 order, *inter alia,* 1) adjudicated J.O.R. a CHINS, 2) found that J.O.R.'s placement in foster care was in her best interests, 3) continued foster-care placement for E.R., C.R., N.R., and J.R., 4) found that the juvenile court was without sufficient information to determine whether placement of the children with Mexican relatives was in their best interests or whether the Vienna Convention is applicable to the proceedings, and 5) held in abeyance the proceedings to terminate parental rights as to E.R., C.R., N.R., and J.R. In the context of the May 3, 1999 order, we will address the two matters raised by Lopez and Rivera in their brief on appeal: the effect of violations of the Vienna Convention and the foster-care placement decisions.

1.

Lopez and Rivera contend that the CHINS proceedings, and orders attendant thereto, were tainted due to violations of the Vienna Convention.[6] As an extension of their argument relating to the Vienna Convention, at various stages in the proceedings, Lopez and Rivera have suggested relitigating portions of the juvenile court proceedings, or returning the children to Mexico in the care of the Consulate or in the care of relatives. Lopez and Rivera conceded at oral argument that the

---

4. Lopez and Rivera attempted an interlocutory appeal in this matter in October 1997. The appeal was dismissed by an order of this court which stated, in pertinent part: "THE MOTION TO DISMISS INTERLOCUTORY APPEAL WHICH ALLEGED THAT THE PRAECIPE WAS NOT TIMELY FILED WITHIN TEN (10) DAYS AFTER THIS COURT'S ORDER GRANTING THE PETITION FOR INTERLOCUTORY APPEAL, IS GRANTED AND THIS ATTEMPTED APPEAL IS DISMISSED". 49A05–9710–JV–433.

5. The praecipe was filed on May 17, 1999. The praecipe requests: "the record of the proceedings up to an[d] including the 13th day of May, 1999, for the purpose of taking an interlocutory appeal on certain issues raised and certified for those purposes." *Record* at

i. The MCOFC also urges that particular issues were certified to this court for review.

6. To the extent that Lopez and Rivera question the CHINS determination as to E.R., C.R., N.R., and J.R., the issue is waived. As correctly noted by MCOFC, the CHINS determination as to the four oldest children was made after a dispositional hearing and order in March 1998. It became a final appealable order at that time. *See T.Y.T. v. Allen County Div. of Family and Children,* 714 N.E.2d 752 (Ind.Ct.App.1999); *Hallberg v. Hendricks County Office of Family and Children,* 662 N.E.2d 639 (Ind.Ct.App.1996). The separate dispositional order for J.O.R. occurred in May 1999. The praecipe is timely as to the CHINS disposition for J.O.R.

juvenile court has jurisdiction to act. They contend, however, that the actions taken by the juvenile court are erroneous due, in part, to the violations. Lopez and Rivera base their concerns on Articles 36 and 37 of the Vienna Convention.[7]

Article 36 is directed to a Consulate's ability to communicate with and have access to its citizens. Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, T.I.A.S. No. 6820. The focus of Article 36 is upon communication and contact when a foreign national is detained, arrested, imprisoned, or placed in custody. *Id.* Lopez and Rivera do not make specific arguments concerning the applicability of Article 36 to the juvenile court proceedings.[8] They do not contend that the Consulate's ability to communicate with them or "have access to them", as required by Article 36, was violated in the juvenile court proceedings. As such, no review pursuant to Article 36 is warranted.

In their principal argument under the Vienna Convention, Lopez and Rivera contend that the failure to notify the Mexican Consulate of the removal of the children and the appointment of a guardian, as required by Article 37, violated the Convention and tainted the proceedings. In pertinent part, Article 37 states:

If the relevant information is available to the competent authorities of the receiving State [Indiana], such authorities shall have the duty:

\* \* \*

(b) to inform the competent consular post without delay of any case where the appointment of a guardian or trustee appears to be in the interest of a minor or other person lacking full capacity who is a national of the sending State [Mexico]. The giving of this information shall, however, be without prejudice to the operation of the laws and regulations of the receiving State [Indiana] concerning such appointments. . . .

 The Convention required notice to the Mexican Consulate when the MCOFC removed the children from Lopez and Rivera and appointed a guardian. It is undisputed that the Mexican Consulate was not notified of the appointment of a guardian for the children by any "receiving State" official. The record reveals, however, that at a hearing held two months after the children were removed from the home and the guardian was appointed, counsel for Lopez and Rivera indicated: "I know that Mr. Rivera, last week, filed a formal request with his Mexican Government, . . . requesting government intervention, so that they may see their children." *Record* at 27. Thus, actual notice of the proceedings was given by a party.

Other jurisdictions have considered the type of notice necessary to comply with the intent of the Convention. In *In the Interest of L.A.M. and R.K.M.*, 268 Kan. 448, 996 P.2d 839 (2000), the Mexican Consulate's representative argued that notice, under Article 37, was not satisfied by the information the Consulate received from the minors' aunt's attorney. The Mexican Consulate urged that the Convention required notice from "competent authorities" "without delay." *Id.* at 840. The court in *L.A.M.* stated:

Although the Consulate may not have been informed of the facts important to this case in the best possible manner, nonetheless, he was informed sufficiently to fulfill the purpose of the treaty. The Consulate took action as a result of the phone call made by the aunt's attorney. The Consulate notified the nearest maternal relatives of the children. The Consulate assisted the aunt in obtaining the necessary documents for her to enter the United States and to claim the body of the minor children's mother. The Consulate took action to allow the

---

7. Our research did not disclose Indiana state court decisions regarding the Vienna Convention; however, other state and federal courts' decisions are instructive.

8. This appeal does not address the separate criminal matters that stemmed from the circumstances underlying the juvenile court proceedings.

aunt to stay in the United States until proceedings were held regarding the children. The Consulate also spoke with the grandfather. The Consulate did not take any action, however, on behalf of the grandfather until December 2, 1998, when he filed the motion for relief from judgment and the motion for interested party status. The Consulate made a strategic decision, believing that the aunt's attorney would be able to represent the interests of the grandfather. The Consulate's representative testified before the district court that had he received "proper notice" from the "competent authorities," his duties would have required him to contact L.A.M. and R.K.M.'s family, which he did. There is no indication that the Consulate would have done anything differently if he would have received "proper notice" from a "competent authority." We hold that the notice given to the Consulate sufficiently upheld the purpose and intent of the treaty.

*Id.* at 841.

The actual notice that occurred here served the purposes of the Convention.

The actual notice to the Mexican Consulate from Rivera allowed the Mexican Consulate's participation in the proceedings. The record indicates that the sporadic nature of the Consulate's involvement was not due to any interdiction by the juvenile court or the lack of notice from a "competent authority." [9]

■ The MCOFC argues that the technical violation of the notice requirement did not harm Lopez and Rivera because Lopez and Rivera do not demonstrate any prejudice from the two-month delay. The MCOFC relies upon criminal cases, involving the Article 36 requirement of notice for detention or arrest of a foreign national, for the proposition that the lack of notice must cause prejudice. *See, e.g., United States v. Carrillo,* 70 F.Supp.2d 854, 860 (N.D.Ill.1999) ("[m]ost courts that have considered the appropriate remedy for an Article 36 violation have first required the foreign national to show that he suffered prejudice as a result of the violation"). We agree that a showing of prejudice must accompany a violation of the notice provision within Article 37. Although Article 36

9. We note that the record contains a December 1998 letter, apparently written to counsel for Lopez and Rivera, from the Consulate General of Mexico. The letter refers to a United States Department of State publication entitled: *Consular Notification and Access: Instruction for Federal, State, and Local Law Enforcement and Other Officials Regarding Foreign Nationals in the United States and the Rights of Consular Officials To Assist Them.* A portion of the publication, in question and answer format, defines "competent authorities" and explains who should give notice:
Q. Who is actually responsible for notification?
A. The responsibility for consular notification, whether in the case of an arrest and detention [Article 36], a death, or the appointment of a guardian for a foreign national [Article 37], lies with what are generally called "competent authorities." This term is understood to mean those officials, whether federal, state, or local, who are responsible for legal action affecting the foreign national and who are competent, within their legal authorities, to give the notification required. This interpretation makes sense as a practical matter: compliance with the notification requirements

works best when it is assumed by those government officials closest to the foreign national's situation and with direct responsibility for it.
* * *
Q. What is the responsibility of judicial officials and prosecutors for notification of arrests and detention?
A. Because they do not hold foreign nationals in custody, judicial officials and prosecutors are not responsible for notification. The Department of State nevertheless encourages judicial officials who preside over arraignments or other initial appearances of aliens in court to inquire at that time whether the alien has been provided with consular notification as required by the [Vienna Convention] and/or any bilateral agreement providing for mandatory notification. The Department also encourages prosecutors to make similar inquires. Inquiries such as these will help promote compliance with the consular notification procedures and facilitate the provision of consular assistance by foreign governments to their nationals.
*Record* at 584.

is inapplicable here, the analysis requiring a showing of prejudice flowing from an error is a common thread in our jurisprudence.

Taken as a whole, Lopez and Rivera's allegations of prejudice are not attributable to the two-month delay between the event that triggered the notice provision and the actual notice by Rivera.[10] Rivera was able to accomplish the goal of the notice provision: to seek assistance from the Consulate. As noted above, that the Consulate did not appear at all of the proceedings is in no way attributable to the two-month delay, any action or inaction by the juvenile court, or any action or inaction by the MCOFC. There is no indication that the proceedings would have been altered in any manner had the Mexican Consulate been notified earlier. *Cf. In the Interest of L.A.M. and R.K.M,* 996 P.2d at 841 (no indication that "proper notice" from "competent authorities" would have altered the Consulate's actions). The record discloses that the Mexican Consulate was afforded adequate opportunity to become involved in the proceedings.

Further, Article 37 specifically states that the notice provision is "without prejudice to the operation of the laws and regulations of the receiving State concerning" the appointment of a guardian. Vienna Convention on Consular Relations, Apr. 24, 1963, art. 37, 21 U.S.T. 77, T.I.A.S. No. 6820. The technical failure to give notice does not vitiate the juvenile court's actions with regard to the children as determined in the May 3, 1999 order. The Vienna Convention does not provide a basis to relitigate J.O.R.'s status as a CHINS, the appointment of a guardian, or the foster-care placement for all of the children. *See In re Stephanie M.,* 7 Cal. 4th 295, 27 Cal.Rptr.2d 595, 867 P.2d 706 (1994) (no basis under the Vienna Convention to relitigate foster placement decision giving preference to Mexican grandmother over

American foster parents as urged by the Mexican Consulate, which had actual notice, even though notification provision of Vienna Convention was violated), cert. denied, 513 U.S. 908, 115 S.Ct. 277, 130 L.Ed.2d 194 (1994).

The MCOFC also argues that the Vienna Convention does not provide a private right of action by foreign nationals to enforce the Convention's terms, thereby depriving a state court of its authority to enforce state law. *See, e.g., Consulate General of Mexico v. Phillips et al.,* 17 F.Supp.2d 1318, 1322 (S.D.Fla.1998) (citing *Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), for the proposition that "the Vienna Convention does not confer upon a Petitioner a private right of action to set aside a criminal conviction and sentence for violation of consular notification provisions because neither the text nor the history of the Vienna Convention expressly provides such a private right of action", but noting that the existence of a private right of action is subject to the procedural rules of the forum state); *United States v. Carrillo,* 70 F.Supp.2d 854 (outlining cases and articles that have discussed whether a private right of action for enforcement exists under the Vienna Convention, but concluding that the issue need not be addressed because the violation did not warrant relief). Because we have determined that Lopez and Rivera are not entitled to any relief, even if a private right of enforcement exists, we need not address the MCOFC's argument that Article 37 does not create such a right.

We hasten to echo a cautionary note sounded by the court in *Arteaga v. Texas Dept. Protective Regulatory Serv.,* 924 S.W.2d 756, 761 n. 6 (Tex.Ct.App.1996), wherein a caseworker for the child of Mexican nationals contacted the Mexican Consulate for information in order to investi-

---

**10.** Because Lopez and Rivera complain of matters within the criminal proceedings, we reiterate that we are confined to questions within the record in the juvenile court proceedings from which they have appealed.

gate placement of the child with Mexican relatives:

> We note ... that the State's actions in this cause constitute the bare minimum of acceptable notice to the Mexican Consulate. We urge the State, in circumstances such as these, to provide a definite documentary record demonstrating that the Mexican Consulate received adequate notice affording it the opportunity for intervention if desired.

While Lopez and Rivera do not present evidence that they are entitled to relitigate or question the actions by the juvenile court based upon the Vienna Convention, they do raise significant concerns regarding compliance with the treaty.[11]

Notwithstanding our concern, absent a showing of prejudice, technical violations of the Vienna Convention's notice requirements do not form the basis for relief from implementation of the substantive laws of Indiana. None of the harm alleged by Lopez and Rivera would have been altered by earlier notice to the Consulate. Article 37 specifically states that the laws of the receiving state, Indiana in this case, are not affected by the requirement to provide notice.

We find that the juvenile court was provided with sufficient information to determine the applicability of the Vienna Convention; thus, the record contains sufficient information for our review. The Vienna Convention's notice requirements are applicable to the proceedings in this case, but Lopez and Rivera failed to demonstrate prejudice due to violation of the notice provision. Further, violations of the notice provision would not require or allow relitigation of the juvenile court proceedings which have occurred. We construe the juvenile court's May 3, 1999 order as denying Lopez and Rivera relief pursuant to the Vienna Convention. We affirm the denial.

2.

■ Lopez and Rivera contend that the juvenile court's placement decisions, and implicit determination that the children should remain in Indiana, are contrary to the evidence. Lopez and Rivera urge that the best interests of the children would necessarily require their placement with foster parents who are familiar with Mexican culture. In the alternative, they urge that the juvenile court must consider sending the children to relatives in Mexico.

■ The placement decisions as to all five of the children are continuing in nature and are ripe for interlocutory appeal.[12] Pursuant to Ind.Code Ann. § 31–34–20–1 (West 1999):

> If a child is a child in need of services, the juvenile court may enter one (1) or more of the following dispositional decrees:

> * * *

> (3) Remove the child from the child's home and place the child in another home or shelter care facility. Placement under this subdivision includes authorization to control and discipline the child.

---

**11.** Our review of cases and writings regarding the Convention reveals that federal and state agencies which do not comply with the Convention, frequently fail to do so out of ignorance. The MCOFC representative at the oral argument held on March 28, 2000, assured this court that, based upon the missteps in the present case, the office is developing a protocol to assure compliance in the future. It is evident from the materials available to this court that better compliance with treaties and conventions, to which the United States is a signatory, will advance reciprocal compliance.

**12.** As noted above, this appeal is timely as to the CHINS determination for J.O.R., and the May 3, 1999 order constituted a final appealable determination as to J.O.R.'s CHINS status. Lopez and Rivera do not question the CHINS determinations apart from the Vienna Convention. Having already determined that Lopez and Rivera are not entitled to relief under the Vienna Convention, we will not further review J.O.R.'s CHINS determination.

While CHINS proceedings are pending, the juvenile court has exclusive jurisdiction over custody decisions, by virtue of its ability to determine placement of the child, until the parties are either discharged or the cause is transferred. *See In re B.W.,* 709 N.E.2d 370 (Ind.Ct.App.1999). The placement decision must be reviewed at least once every six months. *See* IC § 31–34–21–2 (version effective until 7–1–99, and version effective after 7–1–99; the version with the later effective date requires "a formal court hearing" by the juvenile court).

The placement decisions are subject to change while the CHINS proceedings are pending, and do not finally determine placement of the children. The requirement that the juvenile court must hold a formal hearing for each periodic review, however, results in a formal determination regarding placement. Because Lopez and Rivera timely filed their praecipe after the May 3, 1999 placement decision as to J.O.R. and the periodic review of the other children's placement, we find that the placement decisions are reviewable in this interlocutory appeal.

Lopez and Rivera effectively contend that the placement decisions in the May 3, 1999 order are contrary to the evidence because the decisions are not in the best interests of the children. Lopez and Rivera contend that the children are being harmed by their placement outside of foster care that Lopez and Rivera term "culturally appropriate". They urge that the best interests of the children require their return to Mexico for services, placement, and maintenance of their cultural heritage. In *T.Y.T. v. Allen County Div. Family Children,* 714 N.E.2d 752, the mother of a CHINS urged that the juvenile court erred by finding that placement of the child with the mother was contrary to the child's best interests. This court recognized that because the best interests criterion is not specified in the CHINS statutes, it is not crucial to the determination. *Id.;* IC § 31–34–20–1.

As a backdrop for our review with regard to culturally appropriate placements, we note that the MCOFC has made efforts to provide culturally appropriate environments for the children. The efforts belie Lopez and Rivera's contention that the children have not received adequate services due to their undocumented status.

The evidence reveals that the MCOFC assigned two Spanish-speaking case managers to provide assistance in obtaining services with the goal of reuniting the family. At a hearing held on January 28, 1997, the court asked Lopez and Rivera to consider whether there could be suitable placement of the children with relatives.

N.R. has been provided with extensive medical and therapeutic care. Upon her release from the hospital, N.R. was placed in a Spanish-speaking foster home that was equipped to meet her medical and therapeutic needs. Although E.R., C.R., J.R., and J.O.R. were not placed in Spanish-speaking foster homes, the children were provided with Spanish-speaking counselors.

At the hearing on March 18, 1997, Lopez and Rivera urged that the children should be placed with Spanish-speaking foster families. Lopez and Rivera gave the MCOFC names of individuals from Lopez and Rivera's church who purportedly were willing to act as foster parents for the children. At the hearing, the MCOFC representative acknowledged that attempts were made to recruit Spanish-speaking foster parents. The representative noted that the MCOFC was willing to grant emergency foster-parent status to interested individuals while they were taking the courses necessary to be certified as foster parents. The representative contacted the people named by Lopez and Rivera. The representative also placed advertisements in a Spanish-language newspaper circulated locally. The MCOFC did not receive any communications from interested persons. Counsel for Lopez and Rivera noted that the impediment to recruiting Spanish-speaking

foster parents is likely the Hispanic community's concern about immigration problems. Counsel noted that the Hispanic community in Indianapolis, where this case originates, is growing. Counsel urged that the MCOFC and governmental agencies must be responsive to the social and governmental services required by the burgeoning Hispanic population.

To the extent that the circumstances in this case draw attention to shortcomings within the present system, we agree that every effort should be made to design a system that is sensitive to the needs of non-English speaking, culturally diverse people. It appears, however, that the juvenile court and the MCOFC used the system available at the time and attempted to adapt the system in a manner that would best accommodate the children's immediate needs. As noted above, Lopez and Rivera recognize the difficulties encountered by the MCOFC.

Lopez and Rivera premise their contentions on a belief that the children are ill-served by non-Hispanic foster care. While we are mindful of the diversity issues raised by Lopez and Rivera, as well as the concerns regarding the availability and implementation of culturally appropriate placements, we are unwilling, based upon the evidence in this record, to determine that only Hispanic foster parents can provide "culturally appropriate" care for Hispanic children who are determined CHINS.

■ Lopez and Rivera cannot complain that the juvenile court failed to consider placement of the children with Mexican relatives. The May 3, 1999 order specifically states that the juvenile court has attempted to assess the viability of placement with the paternal grandparents in Mexico. Lopez and Rivera's complaint is based upon delay to which they have contributed. Lopez and Rivera objected to translation of the home study of the paternal grandparents by any source other than the Consulate. Neither the Consulate, nor the parents have provided the court with the information upon which it could base a decision as to the feasibility of placing the children with the paternal grandparents. Essentially, Lopez and Rivera invited any error in the juvenile court's inability to assess a basis for placing the children with relatives in Mexico. "An error invited by the complaining party is not reversible error." *Smith v. Washington,* 716 N.E.2d 607, 613 (Ind.Ct.App.1999). Lopez and Rivera have waived any possible error at this stage in the proceedings, with regard to the placement of the children with relatives in Mexico.

Further, we note that the May 3, 1999 order does not foreclose further consideration of the children's placement with relatives in Mexico. As we have discussed, the placement decisions must be formally reviewed every six months. Also, the May 3, 1999 order specifies reunification with "parent (s)" as the plan for permanency. In that regard, the termination proceeding as to the four oldest children was held in abeyance.

We cannot say that the juvenile court's placement determinations, made in May 1999, were contrary to the evidence.

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.