784 N.W.2d 457 (2010)
18 Neb. App. 449
In re INTEREST OF ANTONIO O. and Gisela O., children under 18 years of age.
State of Nebraska, appellee,
v.
Jose O., appellant.
No. A-09-1012.
Court of Appeals of Nebraska.
June 1, 2010.
*460 Thomas K. Harmon, of Law Offices of Thomas K. Harmon, for appellant.
Donald W. Kleine, Douglas County Attorney, and Amy Schuchman for appellee.
IRWIN and CARLSON, Judges.
PER CURIAM.
Jose O. appeals the order of the separate juvenile court of Douglas County terminating his parental rights to Antonio O. and Gisela O. The issue presented on appeal is whether the State's failure to comply with the Vienna Convention on Consular Relations (Vienna Convention) resulted in a deprivation of Jose's due process rights. For the reasons set forth herein, we find that the failure to comply did not deprive Jose of his constitutional right to due process, and we affirm the order of the separate juvenile court terminating his parental rights to his two children.

FACTUAL AND PROCEDURAL BACKGROUND
Jose is the natural father of Antonio, born in October 2004, and Gisela, born in July 2006. The two children have a half sister, Yelitza G., born in June 1998, who has the same mother and was included in the proceedings in this case. Jose is a Mexican national, and his two children are U.S. citizens. There is considerable history of domestic violence between Jose and the children's mother. Such abuse was the reason that Yelitza and Antonio were removed from the home in March 2006.
The State filed a motion for temporary custody of Yelitza and Antonio on March 17, 2006, which motion was granted by the court on March 17. The State filed a *461 petition alleging that Yelitza and Antonio came within the meaning of Neb.Rev.Stat. § 43-247(3)(a) (Reissue 2004) by reason of the faults and habits of their mother. Gisela was born in July 2006 with amphetamine in her system. The following day, the State filed a motion for temporary custody, which was granted by the court, and its supplemental petition, alleging that Gisela came within the meaning of § 43-247(3)(a) by reason of the faults and habits of her mother. On July 12, the separate juvenile court adjudicated the three children by reason of the faults and habits of their mother.
While the original petitions related solely to the mother, on July 24, 2006, the State filed its second supplemental petition, alleging that Antonio and Gisela came within the meaning of § 43-247(3)(a) (Cum.Supp.2006) by reason of the faults or habits of Jose, in that Jose engaged in domestic violence with the children's mother; that Yelitza, a "sibling to [the] children," had been hit by Jose; and that the children were at risk for harm. Personal service of the notice of adjudication was returned undeliverable, but Jose's attorney had notice of the proceedings and service was made by publication. Jose participated in intensive family preservation services with the children and their mother in 2006.
In its order dated January 11, 2007, the court adjudicated Antonio and Gisela as to Jose, finding that the allegations that Jose had engaged in domestic violence and that the children were at risk of harm were true by a preponderance of the evidence. The court dismissed the remaining allegation of the petition, finding insufficient evidence of such.
On July 1, 2008, the children's mother filed a petition to obtain a domestic abuse protection order against Jose because of an incident on June 30, 2008, when Jose was at her house, threatening her. The mother included information in her petition that Jose had hit her, punched her, and kicked her on several occasions throughout their relationship and that she was concerned for her safety. The district court for Douglas County filed an ex parte domestic abuse protection order on July 1. However, 3 weeks later, the mother filed a motion to vacate and set aside and to dismiss the protection order, stating that Jose was enrolled in domestic violence classes, and such motion was granted by the court.
On August 12, 2008, Yelitza called the 911 emergency dispatch service because of a domestic disturbance between her mother and Jose. An officer of the Omaha Police Department responded to the call. The officer determined that Jose had been at the house and had hit the children's mother and yelled at her. This occurred while the three children were all present. Jose was subsequently apprehended and was charged with domestic assault in the third degree, pursuant to Neb.Rev.Stat. § 28-323(4) (Reissue 2008), and disturbing the peace, pursuant to Neb.Rev.Stat. § 28-1322(1) (Reissue 2008). Jose pled guilty and was sentenced to 40 days in jail. Following his arrest, Jose was subject to deportation. On August 13, the children's mother filed another petition for a domestic abuse protection order. The district court filed an ex parte domestic abuse protection order that same day, setting a hearing date of September 2. No additional information regarding such protection order was included in the record.
Between the January 2007 adjudication and May 2009, there were numerous review and permanency planning hearings addressing the ongoing services provided to Jose and the children's mother. On numerous occasions, Jose was ordered by the court to complete a domestic violence *462 class and a parenting class, to maintain a legal source of income and stable housing, and to be tested at the child support office to determine paternity. On February 22, 2007, Jose, per the court's order, was given reasonable rights of supervised visitation in a neutral setting. However, beginning in August 2006, the mother was ordered not to allow contact between Jose and the children. Orders on August 9, 2006, January 11, 2007, and March 25, 2009, specifically disallowed any contact between the children and Jose. Orders on December 13, 2007, and April 11, 2008, ordered the mother to contact the Department of Health and Human Services (DHHS) if Jose attempted to contact her or the children, and orders on July 8 and October 14, 2008, ordered the mother to abide by the safety plan, which was identified at the termination hearing as contacting 911 if Jose was present. From May until November 2008, the children were placed in the home of their mother, but were returned to foster care due to the mother's drug abuse. We note that after March 2006, Antonio and Gisela were never placed in Jose's home.
In addition to the domestic disturbance in August 2008, there was at least one other occasion after the children were removed from his home when Jose had contact with the children, but none of such contacts were in the context of court-ordered visitation. There were reports that the children may have seen Jose sometime in July 2008 and in early 2009. Jose did not have any contact with DHHS workers and did not provide a current address or telephone number at any time. While Jose was incarcerated in September 2008, a DHHS caseworker talked to Jose about the court's orders pertaining to him and the need for him to contact DHHS with an address and telephone number in order to request visitation or obtain information about the children. DHHS did not have any further contact with Jose. The DHHS caseworker testified that she had heard that Jose had been deported, but that he had returned to Omaha at some point in early 2009. No other verification of Jose's whereabouts after September 2008 was included in the record.
On May 11, 2009, the State filed a motion to terminate Jose's parental rights, alleging that Antonio and Gisela came within the meaning of Neb.Rev.Stat. § 43-292(1), (2), (6), (7), and (9) (Reissue 2008). The motion also alleged that reasonable efforts were not required, because Jose had subjected the children to aggravated circumstances. The State was unable to personally serve notice of the proceedings to Jose; thus, service was made by publication, and notice was properly provided to Jose's attorney.
The separate juvenile court held its hearing on the motion for termination on August 3 and September 23 and 24, 2009. Jose's attorney appeared at the hearing on Jose's behalf. The evidence at such hearing clearly showed that DHHS had not provided written notice to the Mexican consulate to inform it as to the termination proceedings. The only contact between DHHS and the consulate occurred sometime after September 2008 when DHHS contacted the consulate for assistance in locating Jose.
On October 1, 2009, the separate juvenile court filed its order terminating Jose's parental rights to Antonio and Gisela. Relying on In re Interest of Angelica L. & Daniel L., 277 Neb. 984, 767 N.W.2d 74 (2009), the court determined that while the State did not comply with the Vienna Convention or with Neb.Rev.Stat. § 43-3804 et seq. (Reissue 2008), the separate juvenile court retained jurisdiction. The court found that Jose had neglected the children, that the children had been in an out-of-home *463 placement for 15 or more of the most recent 22 months, and that Jose had abandoned the children for the requisite 6-month period. The court further found that reasonable efforts had been made to preserve and reunify the family, but that such had failed to correct these conditions, and that it was in the best interests of the children that Jose's parental rights be terminated. Jose timely appealed.

ASSIGNMENTS OF ERROR
Jose assigns as error, restated and renumbered, that (1) DHHS violated the terms and provisions of the Vienna Convention and that such breach constituted a denial of due process, (2) the separate juvenile court erred in denying Jose's motion to dismiss at the conclusion of the State's case in chief, (3) the decision of the separate juvenile court is contrary to the great weight of the evidence and the law, (4) the separate juvenile court failed to consider a reasonable alternative to termination of parental rights, and (5) the separate juvenile court erred in finding that termination of Jose's parental rights was in the best interests of Antonio and Gisela.

STANDARD OF REVIEW
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. Id.
In reviewing questions of law, an appellate court in termination of parental rights proceedings reaches a conclusion independent of the lower court's ruling. See In re Interest of Jessica J. & Jennifer C., 9 Neb.App. 521, 615 N.W.2d 119 (2000).

ANALYSIS

State's Violation of Vienna Convention.
Jose argues that the State's failure to notify the Mexican consulate of these proceedings pursuant to the Vienna Convention resulted in the violation of Jose's due process rights. The Vienna Convention, art. 37, Apr. 24, 1963, 21 U.S.T. 77, 102, provides, in pertinent part:
If the relevant information is available to the competent authorities of the receiving State, such authorities shall have the duty:
....
(b) to inform the competent consular post without delay of any case where the appointment of a guardian or trustee appears to be in the interests of a minor or other person lacking full capacity who is a national of the sending State. The giving of this information shall, however, be without prejudice to the operation of the laws and regulations of the receiving State concerning such appointments.
Section 43-3804, which addresses the responsibilities of the State when a foreign minor or a minor with multiple nationalities is involved in juvenile proceedings, states in pertinent part:
(2) [DHHS] shall notify the appropriate consulate in writing within ten working days after (a) the initial date [DHHS] takes custody of a foreign national minor or a minor having multiple nationalities or the date [DHHS] learns that a minor in its custody is a foreign national minor or a minor having multiple nationalities, whichever occurs first, (b) the parent of a foreign national minor or a minor having multiple nationalities has requested that the consulate be notified, or (c) [DHHS] determines that *464 a noncustodial parent of a foreign national minor or a minor having multiple nationalities in its custody resides in the country represented by the consulate.
The Nebraska Supreme Court held, in In re Interest of Angelica L. & Daniel L., 277 Neb. 984, 767 N.W.2d 74 (2009), that § 43-3804 (Cum.Supp.2006) did not create a jurisdictional prerequisite to a juvenile court's exercise of jurisdiction and that when the State fails to strictly comply with the requirements of § 43-3804, the juvenile court is not divested of its jurisdiction to make decisions regarding a juvenile over whom the court properly exercised jurisdiction under § 43-247 (Reissue 2004). The court's rationale was premised upon the general notion that to obtain jurisdiction over a juvenile, the juvenile court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. In re Interest of Angelica L. & Daniel L., supra.
The Supreme Court, however, declined to decide whether compliance with the Vienna Convention is a jurisdictional prerequisite for proceedings in juvenile court, because the court found that the trial court had not erred in determining that the State complied with the requirements of the Vienna Convention. While the court did not specifically hold that compliance with the Vienna Convention is not a jurisdictional prerequisite for juvenile court, the court did discuss precedent in other jurisdictions on this issue:
Other jurisdictions have considered the same issue and have concluded that compliance with the Vienna Convention is not a jurisdictional prerequisite. [See In re Stephanie M., 7 Cal.4th 295, 867 P.2d 706, 27 Cal.Rptr.2d 595 (1994).] In In re Stephanie M., the California Supreme Court concluded that any delay in notice to the Mexican consulate did not deprive the California court of jurisdiction. In so concluding, the court analyzed and interpreted the language of the Vienna Convention to mean that the jurisdiction of the receiving state is permitted to apply its laws to a foreign national and that the operation of the receiving state's law is not dependent upon providing notice as prescribed by the Vienna Convention.
Other jurisdictions have concluded that state courts do not lose jurisdiction for failing to notify the foreign consulate as required by the Vienna Convention unless the complainant shows that he or she was prejudiced by such failure to notify. [See, Breard v. Greene, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); E.R. v. Office of Family & Children, 729 N.E.2d 1052 (Ind.App.2000).]
In re Interest of Angelica L. & Daniel L., 277 Neb. at 1002-03, 767 N.W.2d at 90.
In re Interest of Angelica L. & Daniel L. is distinguishable from this case in two ways. First, in In re Interest of Angelica L. & Daniel L., the State had faxed a letter of inquiry to the Guatemalan consulate and had contacted the U.S. Embassy in Guatemala, but the Guatemalan consulate indicated that it had not received notification of the termination proceedings. On the other hand, in this case, there is no evidence that any contact occurred between the State and the Mexican consulate regarding the termination proceedings. The State concedes in its brief that no one contacted the Mexican consulate at any time during the proceedings in juvenile court other than the inquiry as to Jose's whereabouts. Second, the Supreme Court in In re Interest of Angelica L. & Daniel L. focused solely on the jurisdictional issue and did not address whether a failure to comply with the Vienna Convention results in a denial of due process rights to the parent, which is what Jose argues here.
*465 However, one of the cases cited by the Nebraska Supreme Court in In re Interest of Angelica L. & Daniel L., 277 Neb. 984, 767 N.W.2d 74 (2009), does address due process rights. That case is In re Stephanie M., 7 Cal.4th 295, 316, 867 P.2d 706, 717, 27 Cal.Rptr.2d 595, 606 (1994), where the California Supreme Court found that there was "no due process right to notice belonging not to an individual but to a foreign consulate for the purpose of enlisting its aid." In simple terms, the California court found that the due process rights belong to the individual, not the foreign consulate. The court also found that the due process rights of the parents and child were met because they had "every procedural protection, including notice, an opportunity to be heard, and the appointment of counsel." Id. In that case, the Mexican consulate contacted the court on behalf of the maternal grandmother, who was a Mexican citizen residing in Mexico, after the adjudication of the child but prior to the termination of the parents' rights.
The Nebraska Supreme Court recognizes that the parent-child relationship is afforded due process protection and that consequently, procedural due process is applicable to a proceeding for termination of parental rights. In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992).
As stated in Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972): "For more than a century the central meaning of procedural due process has been clear: `Parties whose rights are to be affected are entitled to be heard....'" When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.
In re Interest of L.V., 240 Neb. at 413-14, 482 N.W.2d at 257.
Here, Jose was represented by the same appointed attorney throughout the adjudication and termination proceedings spanning 3 years. Jose had participated in intensive family preservation services ordered by the court in 2006. Jose was not able to be served personally with summons for these juvenile proceedings, because his whereabouts were not known; thus, service was made by publication. Jose's counsel was properly provided with the State's motions and the court orders from the review and permanency planning hearings, as well as the motion for termination of Jose's parental rights. Jose was not present at the termination hearing, but his counsel appeared on his behalf and had the opportunity to cross-examine the witnesses and adduce evidence on Jose's behalf. Evidence at the termination hearing indicated that Jose had been deported in September 2008, but that he had returned to Omaha in early 2009, before the motion for termination of parental rights was filed. Evidence at the termination hearing also indicated that on a few occasions in 2007 and 2008, Jose had contact with the children but did not ever contact DHHS to update his address or telephone number. Even after DHHS workers talked with Jose in September 2008, Jose failed to provide DHHS with any information as to his whereabouts.
If a parent does not attend a termination of parental rights hearing after *466 notice that such proceeding has been instituted and the parent has representation at such hearing through his or her counsel, then there is no denial of due process. See, In re Interest of A.G.G., 230 Neb. 707, 433 N.W.2d 185 (1988); In re Interest of Jessica J. & Jennifer C., 9 Neb.App. 521, 615 N.W.2d 119 (2000). In In re Interest of A.G.G., supra, a mother appealed from the judgment of the county court which terminated her parental rights, and she assigned as error that there was lack of proper notice, lack of jurisdiction, and insufficiency of the evidence. Personal service was unsuccessful, but was accomplished by publication. The mother had not been in contact with DHHS, her child, or her attorney. The mother's appointed counsel moved to withdraw because he was unaware of her whereabouts and could not contact her. She was appointed new counsel, who moved to dismiss for lack of jurisdiction due to the absence of proper notice. The Supreme Court held that "due process still requires that such person be afforded reasonable notice of further proceedings. However, once having appeared, and having the benefit of counsel, that person has some obligation to keep counsel and the court informed of his or her whereabouts." Id. at 713, 433 N.W.2d at 190. Likewise, in In re Interest of Jessica J. & Jennifer C., supra, a father who was served with summons instituting the proceedings and whose attorney was given notice and appeared at the continued hearing was not denied due process when the court failed to provide notice of the continued hearing date. Here, Jose had notice that proceedings involving his children were taking place in juvenile court even if he was not personally served with notice of the termination hearing. Jose also had the opportunity to be represented by counsel at all times during the proceedings, thereby affording Jose the right to cross-examine witnesses. Therefore, we find that Jose was provided with reasonable procedural safeguards and was not deprived of due process.
Jose argues that the State's failure to comply with the Vienna Convention prejudiced him in three ways: Jose did not know of his right to consult with the Mexican consulate; had he been notified, Jose would or could have availed himself of that right; and there was a likelihood that said contact with the consular official would have provided assistance to him. We cannot agree that Jose was prejudiced by the State's failure to notify the Mexican consulate. Jose had ample opportunities to contact DHHS in regard to his children and failed to do so at any time. Thus, he has clearly demonstrated by his conduct that it was extremely unlikely he would have contacted the Mexican consulate at any time regarding these proceedings. Furthermore, he was adequately represented by appointed counsel throughout the proceedings, and there is no evidence to suggest that Jose was not able to communicate with his attorneyif he chose to do so. While Jose's attorney argues in this appeal that Jose could have gotten "assistance" from the Mexican consulate, brief for appellant at 19, we have no notion of what such "assistance" would have been. Moreover, there is no evidence of how that "assistance" in these proceedings would be different from, or better than, having a duly licensed attorney representing him at all timesas he did. Thus, there is simply no basis to conclude that Jose was prejudiced by DHHS' failure to notify the Mexican consulate.
Recognizing that at its core, due process involves notice of proceedings affecting a person and an opportunity to be heard in such proceedings, it is clear that Jose was not denied due process. Further, there is no basis to find that he suffered any actual *467 prejudice from the State's failure to notify the Mexican consulate. Therefore, while we find that this assignment of error lacks merit, we cannot help commenting that DHHS should put in place procedures to ensure that the dictates of § 43-3804 (Reissue 2008) are followed.

Remaining Assignments of Error.
Jose's brief contains four other assignments of error. However, none of these assignments of error are argued in his brief. Errors that are assigned but not argued will not be addressed by an appellate court. Epp v. Lauby, 271 Neb. 640, 715 N.W.2d 501 (2006). In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007). Section 43-292(7) specifically provides that termination of parental rights is appropriate if "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Antonio was removed from Jose's care in March 2006 and was not subsequently returned to his care at any time. Gisela was never in Jose's care. The evidence was undisputed that Antonio and Gisela were in an out-of-home placement for more than 15 months of the 22 months prior to the State's motion to terminate Jose's parental rights. Section 43-292 specifically requires that in a proceeding for termination of parental rights, the court must find such termination to be in the child's best interests. In re Interest of Kindra S., 14 Neb.App. 202, 705 N.W.2d 792 (2005). This requirement ensures that there are ample safeguards in place to ensure that termination of parental rights is not based solely on the duration of out-of-home placement. Id. There was considerable evidence that the children had been present during incidents of domestic abuse between Jose and the mother, and the court's review orders made it very clear that Jose's presence created safety concerns for the children and their mother. There had been very little contact between the children and Jose during the more than 2 years that the children were in State custody. The DHHS caseworker opined that termination of Jose's parental rights was in the best interests of the children because of the domestic violence and the lack of contact with his children. After reviewing the record in its entirety, we find that the court's determination that there was sufficient evidence that termination of Jose's parental rights was in the children's best interests was not plain error. We will not address these assignments of error any further.

CONCLUSION
Because we have determined that the State's failure to comply with the Vienna Convention did not result in a denial of Jose's due process rights, we affirm the order of the separate juvenile court terminating Jose's parental rights to Antonio and Gisela.
AFFIRMED.
SIEVERS, Judge, participating on briefs.