IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF JAIDEN L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JAIDEN L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
JAMIE L., APPELLANT.

Filed December 31, 2013.    No. A-13-295.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER KELLY, Judge. Affirmed.

Regina T. Makaitis for appellant.

Donald W. Kleine, Douglas County Attorney, Amy N. Schuchman, and Patrick C. McGee, Senior Certified Law Student, for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jamie L. appeals from the order of the juvenile court which terminated her parental rights to her daughter, Jaiden L. On appeal, Jamie challenges the juvenile court's finding that her parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp. 2012) and the court's finding that termination of her parental rights is in Jaiden's best interests. In addition, Jamie asserts that the juvenile court erred in denying her motion for visitation pending this appeal of the termination of her parental rights and in denying her motion for family therapy.

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Jamie's parental rights. In addition, we find that Jamie's assertion regarding the juvenile court's denial of her motion for visitation pending this appeal is

now moot. We decline to consider Jamie's assertion concerning the motion for family therapy due to her failure to provide any argument in support of this assertion. As such, we affirm the order of the juvenile court in its entirety.

## II. BACKGROUND

These proceedings involve Jaiden, born in August 2003. Jamie is Jaiden's biological mother. Jaiden's biological father is not a party to this appeal, and thus, his participation in the juvenile court proceedings will not be discussed further.

The current juvenile court proceedings were initiated in August 2011. However, this is not the first time that Jamie and Jaiden have been involved with the juvenile court system. In September 2005, when Jaiden was 2 years old, she was removed from Jamie's care as a result of Jamie's use of methamphetamine. After Jaiden was removed from Jamie's care, Jamie participated in an inpatient drug treatment program and in individual therapy. Ultimately, Jaiden was returned to Jamie's care in May 2008, after spending over 2½ years in a foster home. The juvenile court proceedings were officially concluded in January 2009.

On August 10, 2011, the Department of Health and Human Services (the Department) received an anonymous report concerning Jamie and Jaiden. The reporter expressed concern about the living conditions at Jamie's home and indicated a belief that Jamie was using drugs again. After the Department received this report, an employee of the Department visited Jamie's home. The employee observed that the home was extremely dirty and unsanitary. There was no running water in the home, and there was garbage cluttering the floors. In addition, a drug test was administered to Jamie and she tested positive for methamphetamine.

Jaiden was removed from Jamie's care on August 23, 2011. Immediately after Jaiden's removal, the State filed a petition alleging that Jaiden was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), because Jamie's home was "in a filthy and unwholesome condition" and because Jamie was using a controlled substance and, as a result, had failed to provide Jaiden with appropriate housing and with proper care and support, which put Jaiden at risk for harm. This petition is the basis for the current juvenile court proceedings.

After the petition was filed, the juvenile court entered an order placing Jaiden in the immediate custody of the Department. Jaiden has remained in the custody of the Department and placed outside of Jamie's home since her removal in August 2011. Notably, Jaiden is currently placed in the same foster home that she previously resided in from September 2005 through May 2008.

On August 31, 2011, an initial hearing was held. At this hearing, Jamie voluntarily agreed to participate with family support services, a pretreatment assessment which was to include a chemical dependency component, and random drug testing. In addition, Jamie was permitted to have supervised visitation with Jaiden.

On December 22, 2011, the State filed an amended petition alleging that Jaiden was within the meaning of § 43-247(3)(a). In the amended petition, the State again alleged that Jaiden was at risk for harm because in August 2011, Jamie's residence was found to be in a filthy and unwholesome condition and because Jamie was using controlled substances. In addition, the amended petition alleged that Jamie's home was again found to be in a filthy and unwholesome

condition in November and that despite Jamie's voluntary agreement to submit to random drug testing, she had failed to cooperate with any such testing.

Shortly after the State filed its amended petition, it also filed an ex parte motion to suspend Jamie's visitation with Jaiden. This motion was based on the recommendation of Jaiden's therapist, Brenda Ticknor. Ticknor reported that Jaiden did not have a desire to see Jamie and that the visits between Jaiden and Jamie were making Jaiden feel uncomfortable. Ticknor believed that forcing Jaiden to have contact with Jamie was not beneficial. Based on Ticknor's report, the juvenile court suspended visitation between Jamie and Jaiden until a hearing could be held.

On January 20, 2012, a hearing was held concerning the State's amended petition and the State's motion to suspend Jamie's visitation with Jaiden. At the hearing, Jamie admitted to a portion of the allegations in the amended petition, including the allegations that Jaiden was at risk for harm because Jamie's home was found to be in a filthy and unwholesome condition in August 2011 and then again in November and that Jamie did not cooperate with random drug testing after she had previously agreed to do so. As a result of Jamie's admissions, the court adjudicated Jaiden as a child within the meaning of § 43-247(3)(a).

Also at the January 20, 2012, hearing, Jamie did not contest the State's motion to suspend visitation. The juvenile court ordered that Jamie be permitted to have therapeutic visitation with Jaiden only if Ticknor determined that such visitation would be appropriate for Jaiden. Shortly after the January 20 hearing, Jamie and Jaiden began having weekly therapeutic telephone conversations with Ticknor present. However, for the duration of the juvenile court proceedings, Ticknor did not approve any regular inperson visitation between Jamie and Jaiden.

On December 13, 2012, the State filed a motion for termination of Jamie's parental rights to Jaiden. In the motion, the State alleged that termination was warranted pursuant to § 43-292(2), because Jamie had substantially and continuously or repeatedly neglected and refused to give Jaiden necessary parental care and protection; pursuant to § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that Jaiden was a child within the meaning of § 43-247(3)(a); and pursuant to § 43-292(7), because Jaiden had been in an out-of-home placement for at least 15 months of the last 22 months. In addition, the State alleged that termination of Jamie's parental rights was in Jaiden's best interests.

After the State filed its motion for termination of Jamie's parental rights, Jamie filed a motion for continued visitation pending an appeal "in the event that the court terminates her parental rights." In addition, Jamie filed a motion requesting that the juvenile court enter an order "authorizing family therapy between herself and Jaiden." A hearing on both motions was held contemporaneously with the hearing on the State's motion for termination of Jamie's parental rights.

The hearing concerning the State's motion for termination of Jamie's parental rights and Jamie's pending motions was held on March 14, 2013. While we have reviewed the evidence presented at the hearing in its entirety, we do not set forth the specifics of the testimony and exhibits here. Instead, we will set forth more specific facts as presented at the hearing as necessary in our analysis below. We do note that a majority of the evidence presented at the

hearing concerned whether Jaiden had any sort of bond with Jamie and whether Jaiden's and Jamie's relationship could be repaired in order to make reunification possible.

After the termination hearing, the juvenile court entered an order finding that the State proved by clear and convincing evidence that grounds for termination of Jamie's parental rights existed under § 43-292(2), (6), and (7) and that termination of her parental rights was in Jaiden's best interests. The court then ordered that Jamie's parental rights to Jaiden be terminated. In addition, the court overruled Jamie's motions for visitation pending an appeal and for family therapy. In overruling the motion for family therapy, the court did note that "[Jaiden] and her therapist will be free to undertake family therapy with [Jamie] at any time it might benefit [Jaiden]. It would, however, given the evidence, not be appropriate or beneficial to [Jaiden] to mandate it at this or any other particular time post-termination of parental rights."

Jamie appeals from the juvenile court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Jamie assigns as error that the juvenile court erred in finding a statutory basis for terminating her parental rights, in finding that termination of her parental rights is in the best interests of Jaiden, and in denying her motion for continued visitation pending this appeal and her motion for family therapy.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

### 2. STATUTORY GROUNDS FOR TERMINATION

The juvenile court found that termination of Jamie's parental rights was warranted pursuant to § 43-292(2), (6), and (7). On appeal, Jamie asserts that the juvenile court erred in finding that the State presented sufficient evidence to prove each of the statutory grounds for termination of her parental rights. Upon our de novo review of the record, we find that the evidence presented at the termination hearing clearly and convincingly demonstrated that Jaiden was in an out-of-home placement for at least 15 of the last 22 months, pursuant to § 43-292(7). As such, we need not specifically address Jamie's assertions concerning the sufficiency of the evidence relevant to § 43-292(2) or (6).

As we mentioned above, termination of parental rights is warranted whenever one or more of the statutory grounds provided in § 43-292 is established. See *In re Interest of Jagger L., supra*. If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Jagger L., supra*.

Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." See, also, *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). This section operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of the parent. *In re Interest of Aaron D., supra*.

In this case, the court found that termination of Jamie's parental rights was warranted pursuant to § 43-292(2), (6), and (7). At the termination hearing, there was uncontradicted evidence which demonstrated that Jaiden was removed from Jamie's home in August 2011 and was never returned to her custody during the pendency of the juvenile court proceedings. As such, when the State filed its motion to terminate Jamie's parental rights in December 2012, Jaiden had been in an out-of-home placement for approximately 15 months. And, at the conclusion of the termination hearing in March 2013, Jaiden had been in an out-of-home placement for approximately 18 months, or 1½ years. Based on this evidence, there is no dispute that Jaiden was in an out-of-home placement for 15 or more months of the most recent 22 months as § 43-292(7) requires.

There is clear and convincing evidence that termination of Jamie's parental rights was appropriate pursuant to § 43-292(7). In light of this fact, we need not, and do not, further address the sufficiency of the evidence to demonstrate that termination was also appropriate pursuant to § 43-292(2) and (6). Jamie's assignment of error relating to the sufficiency of the statutory authority to support termination is without merit.

### 3. BEST INTERESTS OF CHILD

Jamie next asserts that the juvenile court erred in finding that termination of her parental rights is in Jaiden's best interests. However, before we address her arguments on this issue, we must explain the implications of our previous finding that termination of Jamie's parental rights was warranted pursuant to § 43-292(7).

In cases where termination of parental rights is based solely on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. *In re Interest of Aaron D., supra*. In such a situation, because the statutory ground for termination does not require proof of such matters as abandonment, neglect, unfitness, or abuse, as the other statutory grounds do, proof that termination of parental rights is in the best interests of the child will require clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *In re Interest of Aaron D., supra*.

In her brief to this court, Jamie argues that termination of her parental rights is not in Jaiden's best interests. Specifically, she argues that termination of her parental rights is not appropriate because she has made significant progress toward improving her circumstances, including attending school, completing an inpatient drug treatment program, and participating in individual therapy. In addition, Jamie argues that a bond exists between herself and Jaiden and that if Jamie is provided with more time, she will be able to achieve reunification with Jaiden.

Jamie's assertions have no merit. Although we recognize that Jamie has made efforts to maintain her sobriety and improve her circumstances and that she clearly loves Jaiden, the evidence presented at the termination hearing clearly and convincingly established that Jaiden does not have a bond with Jamie and that Jaiden's relationship with Jamie is not beneficial to her.

Jaiden testified at the termination hearing. Jaiden's testimony revealed that Jaiden does not have a strong connection with Jamie and that their relationship has clearly suffered as a result of Jamie's past drug use and the poor choices she made while using drugs. During Jaiden's testimony, she told the juvenile court about her life with Jamie. Jaiden described not having the right foods to eat or the right-sized clothes to wear. In addition, she described how her older brother "choked" her multiple times and, although Jaiden told Jamie about these incidents, Jamie did not do anything to address the issue. Jaiden testified that she feels "upset" with Jamie about what has happened in the past. In fact, Jaiden explained that she does not like to refer to Jamie as "mom" because she feels like Jamie did not act like her mother and did not take good care of her.

Jaiden also testified about her desires for the future. She told the court that she does not want to live with Jamie because Jamie did not keep her safe and Jaiden does not "want to live like that." Jaiden also told the court that she did not feel comfortable having visitation with Jamie and that she feels nervous and sick when she has to speak with Jamie on the telephone. Jaiden is afraid that Jamie will take her away from her foster family. Jaiden expressed feeling nervous, but excited, about the prospect of having Jamie's parental rights terminated and about being able to move on with her life. Jaiden indicated that she had no doubts about her feelings.

In addition to Jaiden's testimony, the State offered the testimony of Jaiden's foster mother and two different experts to demonstrate that Jaiden does not have a bond with Jamie and that Jaiden's and Jamie's relationship is harmful to Jaiden.

Jaiden's foster mother testified that Jaiden lived with her family from September 2005, when Jaiden was 2, to May 2008, when Jaiden was 4. Jaiden returned to the same foster family in August 2011, when Jaiden was 7. At the time of the termination hearing in March 2013, Jaiden was 9 years old and she continued to reside with her foster family. When we calculate the total amount of time that Jaiden has lived with her foster family, it equates to 4 years, or almost half of Jaiden's life.

Jaiden has a strong bond with her foster family as a result of the length of time she has spent living in their home. Dr. Glenda Cottam performed a bonding assessment on Jamie and Jaiden. After the assessment, Dr. Cottam concluded that Jaiden identified her foster family, rather than Jamie, as her "family." Jaiden told Dr. Cottam that she does not feel safe with Jamie. When Dr. Cottam observed Jamie and Jaiden together, she perceived that Jaiden was not overly excited to see Jamie, even though Jaiden had not seen her mother in approximately 5 months. In fact, during the assessment, Jaiden expressed a great deal of anxiety. Ticknor, Jaiden's therapist,

testified that Jaiden has repeatedly asked Jamie to "sign over" her parental rights so that Jamie can be adopted by her foster family.

While Jaiden does have a strong connection with her foster family, she does not appear to have any sort of bond with Jamie. Jaiden does not want to see Jamie and does not want to participate in their weekly telephone calls. Jaiden reports feeling sick both before and after having any contact with Jamie. Jaiden has tried "bargaining" with Jamie by telling her that if Jamie would agree to let Jaiden be adopted by her foster family, then Jaiden would agree to still see Jamie. Jaiden has even asked Jamie not to tell Jaiden that she loves her because Jaiden does not believe that Jamie does love her.

Ticknor has diagnosed Jaiden as suffering from posttraumatic stress disorder as a result of her experiences in Jamie's home. Jaiden has tried to talk with Jamie about her feelings concerning their past, but Jamie has refused to acknowledge Jaiden's feelings or memories. Ticknor reported that Jamie seemed unwilling to genuinely work on things with Jaiden. As a result, Jaiden's contact with Jamie is a barrier to her healing process. Ticknor recommended that Jaiden have absolutely no contact with Jamie so that she can begin to feel safe and secure.

Both Ticknor and Dr. Cottam testified about their concerns with reunifying Jamie and Jaiden. Ticknor testified that Jaiden needs a permanent home and that such permanence cannot occur at Jamie's home because of the problems in Jamie's and Jaiden's relationship. Similarly, Dr. Cottam testified that she could not recommend reunification because it would be detrimental to Jaiden's well-being.

Based on the overwhelming evidence which demonstrated that Jamie's and Jaiden's relationship is damaged beyond repair, we agree with the opinions of Ticknor and Dr. Cottam that reunifying Jamie and Jaiden would not be beneficial to Jaiden. In addition, we agree with the decision of the juvenile court that, as a result of the damage in Jamie's and Jaiden's relationship, termination of Jamie's parental rights is in Jaiden's best interests. It is clear that Jaiden does not have a bond with Jamie. She does not want to live with Jamie and does not even want to have telephone contact with her. Jaiden has suffered emotional damage as a result of her time in Jamie's home, and in order to recover from that damage, Jaiden needs a permanent home, which does not include Jamie. Ultimately, we find that the evidence clearly and convincingly shows that a court-imposed family reunification is not in Jaiden's best interests. As such, we affirm the order of the juvenile court which terminated Jamie's parental rights to Jaiden.

#### 4. MOTIONS FOR CONTINUED VISITATION AND FOR FAMILY THERAPY

After the State filed its motion for termination of Jamie's parental rights, Jamie filed a motion for continued visitation pending an appeal "in the event that the court terminates her parental rights." In addition, Jamie filed a motion requesting that the juvenile court enter an order "authorizing family therapy between herself and Jaiden." The juvenile court overruled both of Jamie's motions, and on appeal, Jamie challenges the court's decision.

(a) Motion for Continued Visitation
Pending Appeal

This court has previously held that a juvenile court retains jurisdiction to award continued contact between a child and a parent whose parental rights have been terminated, when such contact is in the child's best interests. See *In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 684 N.W.2d 594 (2004). However, in this case, Jamie specifically indicated to the juvenile court that her request for continued visitation with Jaiden was limited to the time period when her appeal of the termination of her parental rights was pending. Similarly, in her brief on appeal, Jamie argues that the juvenile court erred in denying her motion for visitation pending an appeal. In support of this argument, Jamie points to certain testimony offered during the termination hearing which indicated that ongoing contact during any appeal of the termination of Jamie's parental rights would be important, particularly in the event that the termination order was reversed, so that there was not a "gap" in Jaiden's connection with Jamie. Brief for appellant at 42.

It is clear from our review of the record that Jamie did not request continued visitation with Jaiden after the resolution of her appeal. And, inasmuch as the appeal is now over, we conclude that Jamie's assertion regarding the juvenile court's denial of her motion for visitation is now moot.

(b) Motion for Family Therapy

In her brief on appeal, Jamie assigns as error the juvenile court's decision to overrule her motion for family therapy. However, in the argument portion of her brief, Jamie focuses only on the court's decision to deny her motion for visitation pending this appeal. She does not provide any argument in support of her assertion that the juvenile court erred in overruling her motion for family therapy, other than a general assertion that "future contact" between herself and Jaiden is important. *Id.* at 43. Because Jamie failed to provide any argument in support of her assertion that the juvenile court erred in overruling her motion for family therapy, we decline to consider her assertion on appeal. See *In re Interest of Antonio O. & Gisela O.*, 18 Neb. App. 449, 461, 784 N.W.2d 457, 467 (2010) ("[e]rrors that are assigned but not argued will not be addressed by an appellate court"). We do note, though, that there was ample evidence presented at the termination hearing which demonstrated that any sort of contact between Jamie and Jaiden was not beneficial to Jaiden and, in fact, was causing Jaiden further harm. In addition, we note that the juvenile court did provide in its order that family therapy may be offered to Jamie and Jaiden in the future at the discretion of Jaiden's therapist.

V. CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Jamie's parental rights. As such, we affirm the order of the juvenile court terminating Jamie's parental rights to Jaiden. In addition, we conclude that Jamie's request for continued visitation pending this appeal is now moot.

AFFIRMED.